F I L E D
United States Court of Appeals
Tenth Circuit

JUL 23 1999

PATRICK FISHER
Clerk

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

vs.

PRISCILLA J. DETERS,

      Defendant-Appellant.

No. 98-3175

## APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS
## (D.C. No. 96-CR-10089-MLB)

Submitted on the briefs:[*]

Kathryn Hall and Jerry B. Kurz, Hall & Kurz, Chicago, Illinois, for Defendant-Appellant.

Annette B. Gurney, Assistant United States Attorney, and Jackie N. Williams, United States Attorney, Wichita, Kansas, for Plaintiff-Appellee.

Before **BALDOCK**, **BRORBY**, and **KELLY**, Circuit Judges.

**KELLY**, Circuit Judge.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1 (G). The cause therefore is ordered submitted without oral argument.

Defendant-Appellant Priscilla J. Deters appeals her conviction and sentence after a jury trial on nine counts of mail fraud, 18 U.S.C. §§ 1341 and 2, and three counts of wire fraud, 18 U.S.C. §§ 1343 and 2. Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm.

## Background

We recount the facts in the light most favorable to the government because a jury convicted Ms. Deters. See United States v. Green, No. 97-6045, 1999 WL 257728, at *1 (10th Cir. Apr. 28, 1999). From a date unknown until August 1994, Ms. Deters operated a Ponzi scheme, in which individuals and church organizations invested money believing that their investment returns were generated by profits from legitimate businesses. However, the returns were instead generated from money invested by later investors. Ms. Deters indicated to investors that their funds would be placed in a certificate of deposit and that after a year, the original investment would be matched by earnings generated by her businesses. She assured the investors that there was no risk of loss, and that the funds would not be placed in commingled accounts. In order to convince potential investors that her investment program was legitimate, Ms. Deters relied upon referrals from individuals whose earlier investments had been matched.

An individual or organization could only participate in Ms. Deters' program by completing documents which indicated how the matched gift would be used, and upon Ms. Deters' approval. Investors were provided with periodic statements which indicated the balance of their accounts. An investigation by the Kansas Securities Commission later revealed that investors' funds had not been placed in certificates of deposit, had been commingled, and that Ms. Deters had spent some of these funds on personal and family expenses. A total of $4,727,923.92 had been invested, and only $1,775,287.80 had been disbursed to the investors.

On appeal, Ms. Deters argues that (1) the district court's bias against her and intimidation of her attorney denied her a fair trial; (2) there was insufficient evidence to convict her of Count VIII of the indictment, which alleged that a November 5, 1992 letter to Barclay College was in furtherance of a scheme to defraud; (3) the court erred by admitting an analysis of bank records which was prepared by an investigator with the Kansas Securities Commission; (4) the court abused its discretion in imposing a fine of $150,000, the maximum allowable under the Sentencing Guidelines; and (5) the government "purchased" a key witness' testimony via a grant of immunity in violation of 18 U.S.C. § 201(c)(2).

Discussion

I.

Ms. Deters first argues that the district court's partiality and intimidation of her attorney denied her a fair trial. As evidence of the court's bias against her, she points to several instances where the court interjected itself into the trial, as well as the court's comments during sentencing. When Ms. Deters' first witness was testifying, the court called both attorneys to the bench and instructed the prosecutor to "wake up": "There is no way you could lay a foundation for that last testimony or the question that was asked and you're just sitting over there like a bump on a log." VI R. at 647. When testimony resumed, the prosecutor's subsequent objection was sustained. Later, during another witness' testimony, the court interrupted three times, and then, after sending the jury out, told counsel:

> Now this man's opinion whether or not the Nazarene church was persecuting your client is absolutely irrelevant in this case. And I don't know what he's in here for. I haven't heard anything yet that remotely relates to this case; but I will not allow this kind of witness to be in here putting on this sort of testimony.

Id. at 779.

Still later, when Ms. Deters' son was testifying, the court interrupted: "I think we've heard about the Savings Plus plan, unless this man has something else to add that at least four other witnesses . . . have not already gotten into." VII R. at 960. In response to a relevancy objection as to the witness' testimony, the court stated, "This man's a lawyer, he says. He ought to be able to answer

- 4 -

questions directly," id. at 959, and later instructed the witness not to volunteer answers.  See id. at 962.

Finally, during sentencing the court opined that "there's something about a person who steals from other people in the name of religion that is simply reprehensible," VIII R. at 147, and that the maximum sentence allowable under the Sentencing Guidelines "is probably not just punishment.  It's not enough.  But it's all I can give."  Id. at 145.  The court also stated that Ms. Deter's twin sister and her other associates also deserve to be prosecuted.  Id.

A trial judge "must be a disinterested and objective participant in the proceedings" and "must not create an appearance of partiality by supporting one of the parties."  United States v. Logan, 998 F.2d 1025, 1028-29 (D.C. Cir. 1993) (internal quotation marks and citation omitted).  However, "[t]he adversary nature of criminal proceedings does not prohibit the trial judge from taking proper steps to aid and assist the jury in the truth finding quest leading to the proper determination of guilt or innocence."  United States v. Pinkey, 548 F.2d 305, 308 (10th Cir. 1977).  In reviewing Ms. Deters' claim of judicial bias, our task is not to "determine whether the trial judge's conduct left something to be desired, or even whether some comments would have been better left unsaid," but rather to "determine whether the judge's behavior was so prejudicial that it denied [Ms. Deters] a fair, as opposed to perfect, trial."  Logan, 998 F.2d at 1029 (internal

quotation marks and citation omitted).  Thus we examine the record "to determine if jurors have been impressed with the trial judge's partiality to one side to the point that this became a factor in the[ir] determination."  United States v. Leslie, 103 F.3d 1093, 1104 (2d Cir. 1997) (internal quotation marks and citation omitted).  We also bear in mind that

> opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. . . .  Not establishing bias or partiality . . . are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display.  A judge's ordinary efforts at courtroom administration — even a stern and short-tempered judge's ordinary efforts at courtroom administration — remain immune.

Liteky v. United States, 510 U.S. 540, 555-56 (1994).

Having carefully reviewed the record, we hold that the district court's comments did not deprive Ms. Deters of a fair trial, as we are unable to say that the comments became a factor in the jury's deliberations.  All of the comments were in response to the case — they did not arise from extrajudicial sources.  The court's statements to the prosecutor during the bench conference were not heard by the jury; neither were the court's comments during sentencing.  Ms. Deters asserts that these latter comments merely expressed the court's partiality which

- 6 -

was evident during the trial, but we fail to find indications of that from the record. The court's interruptions and comments as to the other two witnesses were appropriate — the testimony being offered was clearly cumulative, irrelevant, based on hearsay, or non-responsive. Finally, we find no evidence for Ms. Deters' assertion that the court's actions intimidated her attorney.

Ms. Deters also contends that reading the lengthy and detailed indictment (30 pages) functioned as a continuation of the government's closing argument, and thus prejudiced the jury against her. However, we have held that where the court explicitly instructs the jury that the indictment is not evidence, there is no error. See United States v. Scott, 37 F.3d 1564, 1577 (10th Cir. 1994). Here, the court's instruction number 3 advised the jury that "[a]n indictment . . . is not evidence of any kind against a defendant, and does not create any presumption or permit any inference of guilt." I R. doc. 78, instr. 3. Thus we find no error.

II.

Ms. Deters maintains that there was insufficient evidence to convict her of Count VIII of the indictment, asserting that no evidence showed that her November 5, 1992 letter to Barclay College was in furtherance of a scheme to defraud. In addressing this claim, we review the record de novo. See United States v. Wolny, 133 F.3d 758, 760 (10th Cir. 1998). There is sufficient evidence

if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).

The essential elements of fraud under 18 U.S.C. § 1341 are (1) the devising of a scheme either to (a) defraud or (b) obtain money through false or fraudulent pretenses, representations, or promises; (2) a specific intent to defraud; and (3) the use of the United States mails to execute the scheme. See United States v. Gigot, 147 F.3d 1193, 1196 n.2 (10th Cir. 1998). The court instructed the jury that "[t]he phrase 'scheme and artifice to defraud' means any deliberate plan of action or course of conduct by which someone intends to deceive or cheat another or by which someone intends to deprive another of something of value." I R. doc. 78, instr. 8. Under this definition, it is clear that Ms. Deters' letter to Barclay College was part of her overall "scheme to defraud."

The college initially invested $90,000 with Ms. Deters in October 1991. The college later asked for the $90,000 back in order to retire some debt and pay for student scholarships. Ms. Deters sent a $90,000 check to the college on November 5, 1992 along with a letter which stated that "[t]he present balance in your account is $90,000." IV R. at 401. In the letter, Ms. Deters also asked the college to reinvest its account balance and enclosed the necessary document. The college then signed the document and returned it to Ms. Deters. The college

never received the additional $90,000 from Ms. Deters.

Although Ms. Deters now asserts that the college did not suffer any harm from the letter because it received its investment back, a pecuniary loss is not required under § 1341. See United States v. Kelley, 929 F.2d 582, 585 (10th Cir. 1991). Further, the jury heard evidence that the $90,000 check that Ms. Deters wrote to the college came not from the funds that the college originally invested, but from funds later invested by other religious organizations. See III R. at 170-72. Based on other evidence that Ms. Deters' scheme relied upon positive referrals, see V R. at 469-70, it was reasonable for the jury to infer that Ms. Deters' November 5, 1992 letter was essential in giving the college the impression that her investment program was legitimate. The letter falsely represented that the college had a present balance of $90,000 in its account and that the balance could be reinvested. Thus there was sufficient evidence for the jury to convict Ms. Deters on Count VIII.

## III.

Ms. Deters next contends that the district court erred in admitting an analysis of bank records which was prepared by Gary Fulton, an investigator with the Kansas Securities Commission. During the course of his investigation, Agent Fulton learned of numerous bank accounts which were connected to Ms. Deters.

Because he was looking for a legitimate source of funds for Ms. Deters' matching program, Agent Fulton asked the banks to provide deposit records for those accounts. After reviewing the records, he prepared spread sheets for accounts that had contained investors' money. He then combined the deposit information into a one-page summary report which was admitted at trial. Ms. Deters now argues that Agent Fulton's analysis was incomplete and thus not relevant.

Although we usually review the admission of evidence for abuse of discretion, see United States v. McIntosh, 124 F.3d 1330, 1338 (10th Cir. 1997), we review the court's decision to admit Agent Fulton's testimony regarding the bank records for plain error because Ms. Deters failed to object. See United States v. Enjady, 134 F.3d 1427, 1435 (10th Cir.), cert. denied, 119 S. Ct. 202 (1998). "Plain error is that which is obvious, or which seriously affects the fairness or integrity of the trial." Id. Having reviewed the record, we conclude that there was no plain error. It was by no means obvious that Agent Fulton's investigation and testimony were incomplete and irrelevant, and Ms. Deters had ample opportunity to cross-examine him in order to show any flaws in his analysis.

IV.

Ms. Deters also asserts that the district court abused its discretion in

imposing upon her the maximum fine allowable under the Sentencing Guidelines. Section 5E1.2(a) directs the sentencing court to "impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." The defendant bears the burden of demonstrating an inability to pay a fine. See United States v. Klein, 93 F.3d 698, 705 (10th Cir. 1996). According to § 5E1.2(c)(3), Ms. Deters was eligible for a fine ranging between $15,000 and $150,000. The court levied a fine of $150,000. We review for an abuse of discretion. See id.

Ms. Deters failed to complete and sign her financial affidavit. She claimed that she was unable to do so because she had not had access to her financial records for over three years, due to a "desist and refrain" order against her issued by the State of California. Following the order, a receiver appointed in 1995 took possession of Ms. Deters' financial records. In addition, Ms. Deters asserts that the fact that she was found eligible for and represented by appointed counsel demonstrated her inability to pay any fine. See USSG § 5E1.2 comment. (n.3).

However, evidence at trial indicated that approximately $2,000,000 was unaccounted for, and Ms. Deters offered no explanation at sentencing as to the whereabouts of this money. Further, the court asked Ms. Deters' counsel at sentencing whether there were "any records that she says existed or exist that somehow [he] couldn't get [his] hands on in this case." VIII R. at 126. Her

counsel responded that there were not.  Finally, as stated above, Ms. Deters did not complete or sign the financial affidavit that she turned in to the probation officer.  All of this leads us to conclude that the district court did not abuse its discretion in finding that Ms. Deters had not met her burden of showing an inability to pay the fine.

V.

Finally, Ms. Deters argues that 18 U.S.C. § 201(c)(2) was violated when a key witness for the government testified following a grant of immunity from the Kansas Securities Commission.  Our en banc decision in United States v. Singleton, 165 F.3d 1297 (10th Cir. 1999) (en banc), cert. denied, 1999 WL 185874 (No. 98-8758), disposes of this argument.  Although Ms. Deters urges us to reconsider our en banc decision, we are not at liberty to do so.  See LeFever v. Commissioner of Internal Revenue, 100 F.3d 778, 787 (10th Cir. 1996).

AFFIRMED.