**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 12 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

TERRY WHITAKER,

Defendant - Appellant.

No. 00-1231

(D. Colorado)

(D.C. No. 99-CR-356-D)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, **ANDERSON**, and **MURPHY**, Circuit Judges.

Defendant Terry Whitaker was convicted following a jury trial on one count

of possession of a firearm by a convicted felon in violation of 18 U.S.C.

§ 922(g)(1). On appeal he argues that: (1) the district court erred in denying his

motion to suppress the firearm at issue for the reason that he did not have

standing to contest the search of the vehicle in which the firearm was found; (2)

the evidence introduced at trial was insufficient to establish the possession

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

element of § 922(g)(1); and (3) the district court erred by allowing Aaron Lewis to testify that he had seen Defendant with the firearm several months prior to the date charged in the indictment. We exercise jurisdiction pursuant to 28 U.S.C. § 1291, and affirm.

## I. BACKGROUND

On August 28, 1999, while Kenneth Hicks, a seasonal ranger at Chatfield State Park, was writing Defendant a $50 mail-in citation for operating his jet ski above wakeless speed in a no-wake zone, Defendant left the area. When Hicks realized that Defendant was gone, he called other officers in the area for help in locating him. Senior Ranger Kristi McDonald-Quintana was among those responding. Upon hearing Defendant's name and date of birth from Hicks, she remembered having arrested Defendant in 1990 for the theft of a vehicle, boat and trailer which Defendant had attempted to conceal by altering vehicle identification numbers ("VINs") and serial numbers. R. Vol. II at 5, 25-26. The officers at the scene ran a check on Defendant through county dispatch and learned that there was a felony warrant for auto theft currently outstanding for his arrest. Id. at 17.

When Quintana arrived at the parking lot where Defendant was last seen, she observed a truck with a camper on it and a trailer with a motorcycle in front

of the truck. Parked next to the truck was a Ford Bronco with a camping trailer behind it. Three people, later identified as Defendant's friends, Scott and Tamara Winstead and Defendant's girlfriend, Serina Toomey, were standing by the truck and Bronco. The Winsteads were able to provide proof that they owned the Bronco. Toomey claimed that she owned the truck and camper, but was unable to provide any proof. When the officers on the scene ran a query on the truck using its license plate and dashboard VIN, they found that it was registered to Defendant. R. Vol. IV at 28.

After confirming the identities of the Winsteads and Toomey, they were allowed to leave in the Winsteads' Bronco. Quintana then visually inspected the truck, camper, trailer and jet ski. She immediately noticed several things indicative of theft: there were wires dangling from the steering column of the truck, R. Vol. II at 18-19; the truck's dashboard VIN had been tampered with, id. at 23-24; the camper's serial numbers had been removed, id. at 19; the professionally manufactured trailer bore a state-issued number corresponding to a home-made trailer, id. at 19; and the jet ski's hull identification number ("HIN") had invalid characters. Id. Based on the numerous indicia of theft she observed, Defendant's absence, the fact that overnight parking was not allowed in the parking area where the truck was located and her inability to release the truck to

-3-

the Winsteads or Toomey without the owners' permission, Quintana impounded the truck, camper, trailer, motorcycle and jet ski.

On August 30, 1999, Quintana met Trooper McGuire at the towing company's lot. McGuire found the truck's true VIN under the hood. It did not match the dashboard VIN. McGuire checked the real VIN through his office and discovered that the truck had been stolen in Denver in June of 1998. Id. at 20. It was later determined that the truck and camper were stolen from Thomas and Dorothy Jackson. On September 3, 1999, the Jacksons came to the towing company's lot and confirmed that the truck and camper were theirs. Id. at 28. They produced keys which fit the truck and camper and removed some of their personal property that was still in the camper. Id. at 29.

After confirming that the vehicle was stolen, Quintana searched the truck and camper. Id. at 20. Quintana found two pieces of mail addressed to Defendant in the cab of the truck and a video camera in the camper. The video camera contained a videotape on which footage of Defendant with the truck and camper was recorded. R. Vol. IV at 47-51. She noticed that the bed in the cab-over portion of the camper had a fitted sheet and other bedding on it and that it looked rumpled as if someone had recently slept there. Id. at 47. In addition, there was a small television with a built-in VCR and a cellular phone at the side of the bed. Quintana also found a current phone bill addressed to Defendant on or near the

bed in the cab-over sleeping area of the camper. Id. at 40-42. The Norinco assault rifle with a short stock and a laser scope Defendant is charged with possessing was discovered underneath the mattress of the bed. One round of ammunition of the same caliber as the rifle was found in a different area of the camper.

Defendant was eventually arrested on September 24, 1999. He was driving Scott Winstead's Bronco and was arrested shortly after he drove into the trailer park where the Winsteads reside. Id. at 95-99. After the district court denied Defendant's motion to suppress the firearm, the case proceeded to trial. At trial, Aaron Lewis, Defendant's landlord, testified that he had seen the Norinco assault rifle at the garage he rented to Defendant. Lewis was able to identify the gun because of its laser scope and unusual stock and also because he owned a less fancy model of the same gun. Id. at 82-83, 85. When Lewis asked about the gun, Defendant stated that the weapon belonged to him. Id. at 81. Lewis warned him that he could not lawfully possess the rifle since he was a restricted person. Defendant asked Lewis to keep it for him, which he did for several months. Sometime in the Spring of 1999, Defendant returned and retrieved the gun despite Lewis' warnings that it was not legal for him to possess it. Id. at 84-85. Lewis also identified the truck and camper where the gun was found as Defendant's and stated that when Defendant retrieved the gun, he put it in his truck. Id. at 85-86.

Following a two-day jury trial, Defendant was convicted and sentenced to 120 months in prison.  This appeal followed.

## II.  DISCUSSION

### A.  Standing

Prior to trial, Defendant moved to suppress the gun he was charged with possessing on the basis that it was found during an illegal search.  The district court denied the motion after determining that Defendant lacked standing to challenge the search because the truck and camper in which the gun was found were stolen.  Defendant now argues that the district court erred in determining that he lacked standing and in denying his motion for that reason.  Whether Defendant has standing to challenge a search is a legal question subject to de novo review.  United States v. Betancur, 24 F.3d 73, 76 (10th Cir. 1994).

As indicated above, Defendant abandoned the truck and camper in a day-parking-only zone and left the scene.  The officers observed that the VIN on the truck had been tampered with, the serial numbers of the camper had been removed and the HIN on the jet ski contained invalid characters.  Moreover, the officers saw wires hanging out of the steering column of the truck, one of the officers had dealt with Defendant in another case where he had stolen cars and altered their VINs and Defendant had an outstanding warrant for auto theft.  After examining

all of the circumstances, we conclude that Quintana lawfully impounded the truck and camper, not only because Defendant had abandoned them as night fell in a day-parking-only area, but also because Quintana had probable cause to believe that the truck and camper had been stolen. Two days later, when her suspicion of theft was confirmed, Quintana lawfully searched the truck and camper. In any event, because they were stolen and Defendant has been unable to prove that he ever had lawful possession or ownership of the truck or camper, he has no standing to challenge that search. Rakas v. Illinois, 439 U.S. 128, 134 (1978) (a person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed); United States v. Miller, 84 F.3d 1244, 1250 (10th Cir. 1996) (defendant has no reasonable expectation of privacy in a vehicle unless he proves he had lawful ownership or possession of the vehicle at the time of the search) rev'd other grounds, United States v. Holland, 116 F.3d 1353 (10th Cir. 1997); Bentancur, 24 F.3d at 77 (defendant had no standing to object to search of a vehicle where he had failed to establish lawful ownership or possession of the vehicle); United States v. Arango, 912, F.2d 441, 446 (10th Cir. 1990) (same); United States v. Erwin, 875 F.2d 268, 271 (10th Cir. 1989) (same). Accordingly, we conclude that

the district court did not err in determining that Defendant lacked standing to challenge the search or in denying his motion to suppress for that reason.

## B. Sufficiency of the Evidence

In order to prove a § 922(g)(1) violation, the government must establish the following elements beyond a reasonable doubt: (1) that the defendant was previously convicted of a felony; (2) that the defendant thereafter knowingly possessed a firearm; and (3) that the possession was in or affecting interstate commerce.[1] United States v. Taylor, 113 F.3d 1136, 1144 (10th Cir. 1997). Defendant stipulated to the first and third elements of the crime, arguing on appeal only that the evidence was insufficient to prove beyond a reasonable doubt that he possessed the gun found in the camper. We review de novo asking only whether taking the evidence, together with any reasonable inferences to be drawn therefrom, in the light most favorable to the government, a reasonable jury could

---

[1]18 U.S.C. § 922 provides in pertinent part:
**§ 922.     Unlawful acts**
(g) It shall be unlawful for any person–
        (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;
. . . .
        to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

find Defendant guilty beyond a reasonable doubt. United States v. Hanzlicek, 187 F.3d 1228, 1239 (10th Cir. 1999).

For purposes of § 922(g)(1), "possession" includes both actual and constructive possession. United States v. Mills, 29 F.3d 545, 549 (10th Cir. 1994). In order to establish constructive possession, the government must show that Defendant "knowingly [had] ownership, dominion, or control over the [gun] and the premises where it [was] found." Taylor, 113 F.3d at 1144-45 (citing Mills, 29 F.3d at 549). Where the defendant is the sole occupant of the place where the firearm is discovered, constructive possession may be inferred from that fact alone. United States v. Hishaw, 235 F.3d 565, 571 (10th Cir. 2000). However, where, as here, there is evidence of joint occupancy of the place where the firearm is found, "some connection or nexus between the defendant and the firearm" must be shown in order to establish his ownership, dominion and control over it. Mills, 29 F.3d at 549. This showing is made if the evidence "support[s] at least a plausible inference that the defendant had knowledge of and access to the weapon." Id. at 550 (quotation omitted).

As Defendant points out, he had been driving the truck with the camper on it for over a year, the truck was registered to him, and he had even pawned the truck and camper and redeemed them from the pawn shop. Appellant's Open. Br. at 18. In addition, a total of three pieces of mail addressed to Defendant were

found in the truck and camper, including a recent phone bill which was found in the sleeping area where the firearm was found. The bed had a slept in look, and we think it unlikely that one could sleep on the mattress without being aware of the gun underneath. A video camera containing footage of Defendant with the truck and camper was also found in the camper.

Lewis' testimony at trial buttressed the evidence found in the truck and camper. He identified the gun at trial and stated that he had seen Defendant with the gun, that Defendant had claimed ownership and that he had stored it for him. Defendant retrieved the gun from Lewis in the Spring of 1999 and put it in his truck. Lewis identified the truck and camper involved as Defendant's.

After carefully reviewing the record, we conclude that when the foregoing evidence is viewed in the light most favorable to the government, it supports "at least a plausible inference that the defendant had knowledge of and access to the weapon." Mills, 29 F.3d at 550. Accordingly, we hold that the evidence in the record provides an adequate basis from which a reasonable jury could find that Defendant constructively possessed the assault rifle beyond a reasonable doubt.

## C. Admission of Evidence

Finally, Defendant argues that the district court's admission of the testimony of Aaron Lewis was error because that testimony was inadmissible under Fed. R. Evid. 404(b). Since no objection to Lewis' testimony was raised at trial, we review for plain error. United States v. Deters, 184 F.3d 1253, 1258 (10th Cir. 1999). We will reverse under the plain error standard only if "admitting [Lewis' testimony] placed the underlying fairness of the entire trial in doubt" or otherwise adversely affected Defendant's "substantial rights." United States v. Rosario Fuentez, 231 F.3d 700, 708 (10th Cir. 2000) (quotation omitted).

Rule 404(b) states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake." Fed. R. Evid. 404(b). However, "[i]t is well settled that Rule 404(b) does not apply to other act evidence that is intrinsic to the crime charged." United States v. O'Brien, 131 F.3d 1428, 1432 (10th Cir. 1997). In other words, evidence that is directly probative of an element of the charged crime is not covered by Rule 404(b). United States v. Green, 175 F.3d 822, 831 (10th Cir. 1999).

As stated above, Lewis testified that he saw Defendant with the gun, kept it for him for several months, and returned it to him in the Spring of 1999. Lewis did not say that he saw Defendant with "a gun," but that he saw him with the actual weapon Defendant is charged with possessing. Lewis was able to specifically identify the gun because of its laser scope and unusual stock. He stated that he was familiar with that type of gun because he owned one, albeit a less fancy version. After reviewing Lewis' testimony, we conclude that it was direct evidence of the possession element of the charged crime, and therefore, not Rule 404(b) evidence. Because Defendant only challenges the admission of Lewis' testimony under that rule, his challenge must fail. Accordingly, we hold that the district court did not plainly err by admitting Lewis' testimony.

## III. CONCLUSION

For the foregoing reasons, Defendant's conviction is AFFIRMED.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge