F I L E D
**United States Court of Appeals**
**Tenth Circuit**

**AUG 19 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

GARY WAYNE THOMAS,

        Defendant - Appellant.

No. 02-7096
(D.C. No. 02-CR-7-P)
(Eastern District of Oklahoma)

**ORDER AND JUDGMENT**[*]

Before **SEYMOUR**, **MURPHY**, and **O'BRIEN**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is, therefore, ordered submitted without oral argument.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

## I. INTRODUCTION

Appellant Gary Wayne Thomas was convicted by a jury of three counts of intent to manufacture methamphetamine, four counts of being a felon in possession of a firearm, three counts of possession of a firearm while in commission of a drug trafficking offense, and one count of possession of methamphetamine with intent to distribute. Thomas appeals his convictions, asserting the search of his vehicle did not comply with the Fourth Amendment. He also asserts the trial court committed reversible error by commenting to a witness that she should save her life from drugs. Finally, Thomas contends that the prosecution adduced insufficient evidence and the district court gave inadequate instruction concerning the interstate commerce nexus necessary to prove the felon in possession of a firearm counts.

Exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court **affirms**, concluding the search and seizure of Thomas' vehicle was lawful as an inventory search pursuant to a lawful impoundment, the trial court's statements were not reversible error, and the evidence and jury instructions satisfied the interstate commerce requirement.

## II. BACKGROUND

Thomas was convicted by a jury of charges arising from four separate incidents spanning a two-year period. On August 31, 1999, police officers

executed a search warrant on an unoccupied residence. Upon entry, police discovered a shotgun and items associated with the manufacture of methamphetamine. Receipts and other documents bearing Thomas' name were found in the residence.

On November 5, 1999, the owner of the Westville, Oklahoma Dairy Bar witnessed a vehicle bump into the front wall of the building. The owner asked an employee to contact the police because the driver was slumped over the steering wheel and there appeared to be a gun in the front seat. Upon arrival, the responding police officer saw Thomas slumped over in the front seat of the vehicle. After the officer roused him, Thomas stepped out of the vehicle. The officer asked for identification and insurance and Thomas informed him that his driver's license was suspended. The police officer then conducted a pat down search, which did not reveal any weapons, and returned to his patrol car to run a check on information provided by Thomas. At that time, another officer arrived on the scene.

When the second officer approached the vehicle, Thomas took out a revolver from the front seat. The officers drew their weapons and told Thomas to drop the revolver. Thomas then shoved the weapon between the seats of the car. The police removed Thomas from the vehicle, placed him under arrest, handcuffed him, and sat him in the back of the patrol car.

Thereafter, the police removed the revolver from between the seats and discovered a shotgun under a jacket in the front passenger side of the car. The officers also discovered chemicals and other items related to manufacturing methamphetamine behind the driver's seat. The officers then cordoned off the area and contacted the District Attorney's Drug Task Force. The vehicle was moved to the fire department where a search of the trunk uncovered more items associated with manufacturing methamphetamine.

On September 26, 2000, a police officer stopped a van that Thomas was driving. Thomas was arrested for not having a driver's license and for the improper affixation of a license plate tag. While conducting a search of the van and the passenger's purse, the officer discovered three guns.

Finally, on May 17, 2001, police responded to a report of a possible drug laboratory in a mobile home. Before police returned with a search warrant, Thomas exited the home and was placed under arrest. A search of the home revealed two firearms and items and substances associated with a methamphetamine laboratory.

Thomas was indicted on three counts of attempt to manufacture methamphetamine, in violation of 21 U.S.C. §§ 841(b)(1)(A), 846(a)(1); four counts of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1); three counts of possession of a firearm while in the commission of a

drug trafficking offense, in violation of 18 U.S.C. § 924(c); and one count of possession with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C). Prior to trial, Thomas filed a motion to suppress which challenged the search of the vehicle at the Dairy Bar ("Dairy Bar search") as "lack[ing] sufficient cause to satisfy the Fourth [A]mendment" and "not justified as a constitutionally cognizable inventory search." After a suppression hearing, the district court denied the motion, concluding that the search was a proper search incident to arrest and a proper search for purposes of officer safety once one weapon had been retrieved from the vehicle. The district court further concluded that the fact that the inventory search occurred prior to the actual arrival of a tow truck was immaterial.

At trial, the passenger of the van stopped on September 26, 2000, Felicia Jones, testified as a government witness. She stated that Thomas improperly placed the license plate tag on the van and had previously shown her one of the weapons that was discovered during the search. She further testified that she had been a methamphetamine user for the past four to five years and had used methamphetamine two weeks prior to testifying. When Jones completed testifying, the trial court addressed the witness, in the presence of the jury, as follows:

THE COURT: Ms. Jones, how old are you, ma'am?

THE WITNESS: 28 — no, 29.

THE COURT: 29. You seem like an intelligent young woman. Do you now appreciate what this stuff is doing to your life?

THE WITNESS: I know it's not doing much good. I'm trying to quit.

THE COURT: Have you ever heard of Narcotics Anonymous? They do the Lord's work. Courageous people recovering from their own addictions. Why don't you go see those folks? They might save your life.
Are these folks here in the courtroom with you? Do you have family here with you?

THE WITNESS: Yes, my mother.

THE COURT: How blessed you are to have her. For your sake and [] for her sake, do something to save your life, would you, please? Make an effort.

During a bench conference, Thomas moved for a mistrial based on the court's comments to Jones in front of the jury. The court did not grant the motion and continued with the trial.

During trial, a government expert witness testified that the various firearms were manufactured outside of Oklahoma and would have traveled in interstate commerce to arrive in the state of Oklahoma. In addition, the jury was instructed that the government could "meet its burden of proof on the question of being 'in or affecting commerce' by proving . . . , beyond a reasonable doubt, that the firearm(s) identified in the Indictment, at any time, had traveled across a state boundary line." Thomas objected to the instruction, claiming it was insufficient

to meet the standard of substantial nexus as established in *United States v. Lopez*, 514 U.S. 549 (1995). The jury found Thomas guilty on all eleven counts. After trial, Thomas filed a motion for judgment of acquittal, alleging that the evidence was insufficient to establish an interstate commerce nexus. The district court denied the motion.

Thomas was sentenced on the various counts to terms ranging from sixty months to life.

## III. DISCUSSION

### A. Dairy Bar Search

Thomas argues that the Dairy Bar search was improper and all evidence seized incident to that search, except the weapon Thomas drew on the officers, should have been suppressed. In reviewing the denial of a motion to suppress, this court examines the district court's factual findings for clear error with the evidence viewed in the light most favorable to the government. *United States v. Haro-Salcedo*, 107 F.3d 769, 771 (10th Cir. 1997). However, the reasonableness of the search and seizure is a question of law reviewed *de novo*. *Id.*

Thomas contends the district court erred in concluding the vehicle search was a permissible inventory search pursuant to an impoundment. The Supreme Court has held that police are entitled to conduct an administrative search of a vehicle in order to secure and inventory its contents when the vehicle has been

lawfully impounded or taken into police custody. *South Dakota v. Opperman*, 428 U.S. 364, 373 (1976). On appeal, Thomas only challenges the lawfulness of the impoundment of his vehicle and not the propriety of the inventory search.[1] He contends that, under Oklahoma law, the police could not have properly impounded his car without permission of the owner of the Dairy Bar because the vehicle was located on private property.

Generally, police have the discretion to impound a vehicle if the decision is based upon standard criteria and something other than the suspicion that there is evidence of criminal activity. *Colorado v. Bertine*, 479 U.S. 367, 375 (1987). Pursuant to Oklahoma case law, "a car on private property cannot be impounded absent a request from the property owner or other specific authorization." *McGaughey v. State*, 37 P.3d 130, 143 (Okla. Crim. App. 2001). Thomas claims that there was no evidence to suggest that the police had the owner's request or permission to tow the vehicle. This court disagrees.

The owner of the Dairy Bar testified that Thomas had run his vehicle into his building. After fifteen to twenty minutes, the owner checked on the vehicle and discovered Thomas slumped over the steering wheel with what appeared to be a gun in the front seat. The owner then told an employee to call the police. The

---

[1]Moreover, Thomas does not challenge the district court's conclusion that "the fact that the inventory search occurred prior to the actual arrival of a tow truck is immaterial."

record clearly supports the conclusion that the owner implicitly requested that the vehicle be removed from the property because the vehicle was pressed against the building, the owner noticed that the car possibly contained a dangerous weapon, and the owner initiated contact with the police. Thus, the impoundment was in accordance with Oklahoma law.

In *United States v. Haro-Salcedo*, this court held that the impoundment of the defendant's vehicle was reasonable when the impoundment was permissible under state law and in accordance with police department policy which required impoundment upon arrest of the driver. 107 F.3d at 771-72. Similarly, the police properly impounded Thomas's car under Oklahoma law and, according to testimony at the suppression hearing, followed police procedure that when a defendant is arrested, his vehicle is inventoried and towed. Therefore, the impoundment of Thomas' vehicle was reasonable and proper.

Because the impoundment was constitutionally permissible and Thomas does not contest the inventory search, this court need not address whether the police inventory was reasonable. Thus, the district court did not err in determining that the inventory search pursuant to the impoundment was lawful.[2]

---

[2]Because this court's conclusion that the inventory search pursuant to the impoundment was reasonable disposes of the issue of whether the items discovered in Thomas' vehicle should have been suppressed, this court need not address whether the search incident to arrest was proper.

## B.    District Court's Comments

Thomas asserts that the district court's remarks to Jones prejudiced his right to a fair jury trial because the statements influenced the jury to convict him in order to protect Jones and society from the harm caused by his alleged drug activities.  This court has recognized that "[a] trial judge must be a disinterested and objective participant in the proceedings and must not create an appearance of partiality by supporting one of the parties." *United States v. Deters*, 184 F.3d 1253, 1256 (10th Cir. 1999) (quotation omitted).  When a trial judge makes comments alleged to have denied a defendant the right to a fair trial, this court must consider "whether the judge's behavior was so prejudicial that it denied [the defendant] a fair, as opposed to perfect, trial." *Id.* (quotation omitted).  Specifically, this court will examine the record to determine if the trial judge's alleged partiality impacted the jury to a level at which the comments became a factor in their determination.  *Id.*

Although the trial judge's comments in this instance were unnecessary, the remarks were not so prejudicial as to deny Thomas the right to a fair trial.  The comments did not reference Thomas at all and there is no natural implication that Thomas was responsible for threatening the witness' life by supplying her the drugs she used, especially since the witness admitted to being a drug user for two to three years longer than she knew Thomas.  Moreover, there were no other

comments made by the district court during the four days of trial which suggested any partiality. In addition, the jury was instructed that anything said by the judge during the course of trial was not intended to influence the jury's verdict. Thus, the district court's comments did not constitute reversible error.

### C.     Commerce Clause Nexus

Thomas argues that the evidence supporting his felon in possession of a firearm convictions under 18 U.S.C. § 922(g) and the jury instruction addressing the requisite proof for an interstate commerce nexus is insufficient under *United States v. Lopez*, 514 U.S. 549 (1995). The denial of a motion for judgment of acquittal is reviewed *de novo*. *United States v. Austin*, 231 F.3d 1278, 1283 (10th Cir. 2000). This court also reviews *de novo* the question of whether the jury was properly instructed. *United States v. Snow*, 82 F.3d 935, 939 (10th Cir. 1996). Additionally, whether § 922(g) is a constitutional exercise of Congress' commerce power is reviewed *de novo*. *United States v. Dorris*, 236 F.3d 582, 584 (10th Cir. 2000).

Thomas specifically alleges that, under *Lopez* and the Commerce Clause, the government was required to prove that the firearm possession had a substantial impact on commerce. As acknowledged by Thomas, this court has previously rejected the argument that an individualized showing of a substantial impact on interstate commerce is necessary under § 922(g). *Dorris*, 236 F.3d at

585; *see also United States v. Farnsworth*, 92 F.3d 1001, 1006 (10th Cir. 1996). This panel is bound by the holding in *Dorris* absent en banc reconsideration or a superseding decision by the Supreme Court. *In re Smith*, 10 F.3d 723, 724 (10th Cir. 1993). Thus, this court must reject Thomas' argument.

In this circuit, the constitutionally permissible proof under § 922(g) is that the firearm was, at some time, in interstate commerce. *United States v. Bolton*, 68 F.3d 396, 400 (10th Cir. 1995). Here, an expert testified that the firearms Thomas possessed had all traveled in interstate commerce to arrive in Oklahoma. Also, the jury was instructed that the government could meet its burden of proof by showing that the firearms had, at any time, traveled across a state boundary line. Therefore, there was sufficient evidence of interstate travel and the jury was properly instructed on the interstate commerce nexus. Thus, in accordance with Tenth Circuit precedent, Thomas' challenge under the Commerce Clause and *Lopez* fails.

## IV. CONCLUSION

Based upon the foregoing reasons, Thomas' convictions and sentence are **AFFIRMED**.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge