**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 22 2000**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

MELVIN EUGENE DORRIS, also
known as Melvin Eugene Littles,

     Defendant-Appellant.

No. 99-6429

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. No. 99-CR-40-L)**

Submitted on the briefs.

Michael G. Katz, Federal Public Defender, and Jenine Jensen, Assistant Federal Public Defender, Denver, Colorado, on the briefs for Defendant-Appellant.

Daniel G. Webber, Jr., United States Attorney, Mark A. Yancey, Assistant U.S. Attorney, and Sue Tuck Richmond, Assistant U.S. Attorney, Oklahoma City, Oklahoma, on the briefs for Plaintiff-Appellee.

Before **BALDOCK**, **PORFILIO**, and **BRORBY**, Circuit Judges.

**PORFILIO**, Senior Circuit Judge.

Melvin Dorris appeals his conviction for felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and his resulting sentence of 210 months' imprisonment. The parties have requested this matter be considered without oral argument, and we have honored that request. Fed. R. App. P. 34(a)(2).

First, Mr. Dorris argues the felon in possession of a firearm statute he violated is beyond Congressional authority under the Commerce Clause. Second, he challenges his sentence relying on the Supreme Court's recent decision in *Apprendi v. New Jersey*, ___ U.S. ___, 120 S. Ct. 2348 (2000), for insufficiency of the indictment, which failed to charge three previous felonies as elements of his crime. Mr. Dorris' claims fail in the face of clear Supreme Court and Circuit precedent on these issues.

## I. THE CASE

On September 19, 1998, Oklahoma City police officer Maurice James arrested Melvin E. Dorris in response to a 911 call that reported shooting in a neighborhood. Mr. Dorris was arrested with a Colt .38 caliber revolver, which contained four expended rounds and two unfired rounds, and a black bag with additional ammunition inside. Officer James contacted the Bureau of Alcohol, Tobacco, and Firearms (ATF) after taking Mr. Dorris and the evidence into custody. Parallel proceedings in federal and state courts followed. Mr. Dorris was charged in Oklahoma state court with possession of a firearm after conviction of a felony. In October 1998, the federal government filed charges against Mr. Dorris, and in February 1999, removed him from the custody of

Oklahoma state officials. In April 1999, he pleaded *nolo contendere* in state court and was sentenced to two years to run concurrently with any sentence imposed in the pending federal case. In June 1999, he was tried before a jury in federal court and convicted of violating 18 U.S.C. § 922(g)(1).

Mr. Dorris was sentenced under the Armed Career Criminal Statute, 18 U.S.C. § 924(e), and accompanying Sentencing Guideline, U.S.S.G. § 4B1.4. The statute requires a mandatory minimum sentence of 15 years. The guideline range was 188-235 months, from which the district court imposed a sentence of 210 months (17 ½ years).

## II. SECTION 922(g)(1) AND THE COMMERCE CLAUSE

Mr. Dorris first argues Congress exceeded its authority under the Commerce Clause in enacting § 922(g)(1). He asks us to strike down the law and to overturn his conviction. In the alternative, Mr. Dorris urges us to hold the government must prove the gun possession had some actual or substantial effect on interstate commerce and remand his case for further proceedings by the district court. Settled Circuit law precludes both these potential remedies, and Mr. Dorris provides us with no argument sufficient to overturn these decisions.

Statutes are presumed constitutional. ***United States v. Morrison***, 529 U.S. 598, 120 S. Ct. 1740, 1748 (2000) (citing ***United States v. Harris***, 106 U.S. 629, 635 (1883)). We review challenges to the constitutionality of a statute *de novo.* ***United States v. Bolton***, 68 F.3d 396, 398 (10th Cir. 1995).

The Commerce Clause gives Congress power "[t]o regulate Commerce with foreign Nations, among the several states, and with the Indian Tribes." U.S. CONST. art. I, § 8, cl. 3. Mr. Dorris was convicted under 18 U.S.C. § 922(g), which he argues lies beyond Congressional authority under the Commerce power. Section 922(g) reads in relevant part:

> It shall be unlawful for any person—
> (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year; . . .
> to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

In 1977, the Supreme Court passed on the very question Mr. Dorris presents us, holding proof the possessed firearm previously traveled in interstate commerce was sufficient to satisfy the nexus between the possession of a firearm by a felon and commerce. *Scarborough v. United States*, 431 U.S. 563, 577 (1977). Nevertheless, Mr. Dorris asserts three subsequent Supreme Court decisions interpreting the boundaries of Congressional power under the Commerce Clause cast doubt on the continuing vitality of *Scarborough*. Those decisions are *United States v. Lopez*, 514 U.S. 549 (1995), *United States v. Morrison*, 529 U.S. 598, 120 S. Ct. 1740 (2000), and *Jones v. United States*, 529 U.S. 848, 120 S. Ct. 1904 (2000).

In *Lopez*, the Supreme Court struck down the "Gun-Free School Zone Act," 18 U.S.C. § 922(q)(1)(a), holding it exceeded Congressional power under the Commerce Clause because the Act did not regulate a commercial activity (possession of a gun near a

- 4 -

school) nor did it contain a requirement the possession of a firearm in a school zone be connected in any way to interstate commerce. *Lopez*, 514 U.S. at 567-68. *Lopez* recognized three broad areas which Congress may regulate under the Commerce Clause: 1) channels of interstate commerce; 2) instrumentalities of interstate commerce, or persons and things in interstate commerce, even though the threat may only come from intrastate activities; and 3) activities that substantially affect interstate commerce. *Lopez*, 514 U.S. at 558-59. This Court's decision in *United States v. Bolton*, 68 F.3d 396 (10th Cir. 1995) (holding § 922(g)(1) a valid exercise of the commerce power because it required the firearm to have traveled in interstate commerce), foreclosed any appeal of Mr. Dorris' conviction based solely on the *Lopez* decision. We also examined § 922(g)(1)'s application post-*Lopez* in *United States v. Farnsworth*, 92 F.3d 1001 (10th Cir. 1996), where the appellant argued the government must show the possession of the firearm had substantial effect on interstate commerce. We rejected that argument, holding an individualized showing of substantial effect on commerce was unnecessary. *Farnsworth*, 92 F.3d at 1006. Nevertheless, Mr. Dorris argues the effect of *Lopez*, when combined with *Morrison* and *Jones*, calls for us to overturn our decisions in *Bolton* and *Farnsworth*.

In *Morrison*, the Court struck down the civil remedy provision of the Violence Against Women Act (VAWA), 42 U.S.C. 13981(b), holding it exceeded Congressional authority to regulate interstate commerce. *Morrison*, 120 S. Ct. at 1754. In so doing, the

Court specifically rejected the "argument that Congress may regulate non-economic, violent criminal conduct based solely on that conduct's aggregate effect on interstate commerce." **Id.** The Court went on to say:

> In recognizing this fact we preserve one of the few principles that has been consistent since the Clause was adopted. The regulation and punishment of intrastate violence that is not directed at the instrumentalities, channels, or goods involved in interstate commerce has always been the province of the States. *See, e.g.*, **Cohens v. Virginia**, 6 Wheat. 264, 426, 428, 5 L.Ed. 257 (1821) (Marshall, C.J.) (stating that Congress "has no general right to punish murder committed within any of the States," and that it is "clear . . . that congress cannot punish felonies generally"). Indeed, we can think of no better example of the police power, which the Founders denied the National Government and reposed in the States, than the suppression of violent crime and vindication of its victims.

**Id.**

In **Jones**, the Court held the federal arson statute, 18 U.S.C. § 844(I), which makes it a federal crime to destroy a building used in interstate commerce or in an activity affecting interstate commerce by means of fire or explosives, does not reach an owner occupied residence not used for any commercial purpose. **Jones**, 120 S. Ct. at 1912. The Court reasoned the building in question needed a more substantial connection to interstate commerce than consuming goods moved in interstate commerce or obtaining financing from an out-of-state company to come within the statute. **Id.** Otherwise, "hardly a building in the land would fall outside the federal statute's domain." **Id.** at 1911.

Despite the presence of some language favorable to Mr. Dorris' cause in **Morrison** and **Jones**, neither **Morrison** nor **Jones** or both, taken in combination with **Lopez**, compel

this Court to overturn its decisions in **Bolton** or **Farnsworth**. Missing from Mr. Dorris'

analysis is the recognition while **Lopez** and **Morrison** were questions concerning the

power of Congress to regulate activities substantially affecting interstate commerce,

§ 922(g)(1) regulates the possession of goods moved in interstate commerce. The

jurisdictional element in § 922(g)(1) puts it into a different category of analysis than the

laws considered in **Lopez** and **Morrison**. Section 922(g)(1) by its language only regulates

those weapons affecting interstate commerce by being the subject of interstate trade. It

addresses items sent in interstate commerce, and the channels of commerce

themselves—ordering they be kept clear of firearms. Thus, no analysis of the style of

**Lopez** or **Morrison** is appropriate.

Jones adds little to this analysis. While the law challenged in **Jones**, the federal

arson statute, did have a jurisdictional element, the challenge was as applied rather than

facial, as it is here. The Court in **Jones** considered the connection of a specific home to

interstate commerce and found it wanting, but this decision has little impact on the

assessment of whether firearms moved through interstate commerce are subject to

Congressional regulation.

The decisions in **Morrison** and **Jones** give no reason beyond what was already

present in **Lopez** to find § 922(g)(1) beyond Congress' Commerce Power. This Court has

twice considered § 922(g)(1)'s post-**Lopez** constitutionality in **Bolton** and **Farnsworth**

- 7 -

and decided in favor of the government. This is in accord with every circuit to examine the question post-***Lopez***, and we shall not overturn precedent here.[1]

### III. SENTENCING

In light of the Supreme Court's recent decision in ***Apprendi v. New Jersey***, ___U.S.___, 120 S. Ct. 2348 (2000), Mr. Dorris challenges his 210-month sentence. Mr. Dorris was convicted on one count of possession of a firearm by a felon under § 922(g)(1). The statutory maximum for this offense is 10 years' imprisonment. 18 U.S.C. § 924(a)(2). Mr. Dorris however, had three prior felony convictions[2] subjecting him to a mandatory minimum sentence of 15 years' imprisonment under 18 U.S.C. § 924(e), the Armed Career Criminal Act. Mr. Dorris maintains the ***Apprendi*** decision requires the prior convictions be charged, treated as elements of his offense, instructed upon, and proven to a jury. Because the government concedes this was not done, Mr. Dorris calls for resentencing without the enhancements of the Armed Career Criminal Act. Mr. Dorris' argument fails in the face of the ***Apprendi*** decision itself and other Supreme Court precedent.

---

[1]*See **United States v. Gateward**, 84 F.3d 670 (3d Cir. 1996); **United States v. Bradford**, 78 F.3d 1216 (7th Cir. 1996); **United States v. Bates**, 77 F.3d 1101 (8th Cir. 1996); **United States v. Turner**, 77 F.3d 887 (6th Cir. 1996); **United States v. McAllister**, 77 F.3d 387 (11th Cir. 1996); **United States v. Sorrentino**, 72 F.3d 294 (2d Cir. 1995); **United States v. Collins**, 61 F.3d 1379 (9th Cir. 1995).*

[2]Mr. Dorris was convicted of: 1) Burglary in 1970; 2) Robbery by Force in 1971; 3) Robbery with Firearms (two counts) in 1977; and 4) Assault and Battery with a Dangerous Weapon (Knife) in 1981.

## A. STANDARD OF REVIEW

The parties disagree over what standard of review should be applied to Mr. Dorris'

claim. Mr. Dorris contends a challenge to the sufficiency of his indictment should be

reviewed *de novo*. He concedes he did not object to the indictment at trial. (Indeed he

was convicted and sentenced before the *Apprendi* decision.). Nevertheless, he argues the

*Apprendi* decision is retroactive, and a court may correct an illegal sentence at any time.

The government counters Mr. Dorris' failure to object to the issue before the

district court requires his challenge to proceed under the standard of plain error. Fed. R.

Crim. P. 52(b). It points out Mr. Dorris challenges only his sentence, not his conviction,

and thus the case law concerning *de novo* review for challenges to indictments is

inapposite. Finally, the government notes other circuits in considering *Apprendi* claims

raised for the first time on appeal have adopted the plain error standard.[3]

The issue warrants careful consideration but is not one we need to settle here. Mr.

Dorris cannot show any error by the district court in fixing his sentence. Thus, under

either standard of review, his claim must fail.

## B. *APPRENDI*

---

[3] *See* **United States v. Mojica-Baez**, 229 F.3d 292, 307 (1st Cir. 2000); **United States v. Swatzie**, 228 F.3d 1278, 1279 (11th Cir. 2000); **United States v. Nordby**, 225 F.3d 1053, 1060 (9th Cir. 2000); **United States v. Meshack**, 225 F.3d 556, 575 (5th Cir. 2000).

Mr. Dorris faces an uphill battle in arguing his sentence to be in error for failing to charge his previous felonies. *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), held prior felony convictions as mere sentence enhancements, not elements of an offense. Despite the *Apprendi* majority's failure to overturn *Almendarez-Torres*, *Apprendi*, 120 S. Ct. at 2362, Mr. Dorris argues *Almendarez-Torres* was effectively overruled in *Apprendi*. He cites for this proposition Justice Thomas' concurrence in *Apprendi*,[4] the dissenters in *Almendarez-Torres*,[5] several intervening concurrences and dissents,[6] and the *Apprendi* majority's criticism of *Almendarez-Torres*.[7]

Nevertheless, *Almendarez-Torres* has not been overruled and directly controls our decision in this case. Mr. Dorris argues he makes his appeal in part to preserve his

---

[4]Justice Thomas' concurrence in *Apprendi* notes he succumbed to error in joining the majority in the 5-4 *Almendarez-Torres* decision. *Apprendi v. New Jersey,* ___ U.S. ___, 120 S. Ct. 2348, 2379 (2000).

[5]Justice Scalia, joined by Justices Stevens, Souter, and Ginsburg, dissented in *Almendarez-Torres*, arguing prior convictions were elements of the offense and had to be pled and proven in order for the district court to have authority to impose a sentence greater than the statutory maximum. *Almendarez-Torres v. United States*, 523 U.S. 224, 270-71 (1998).

[6]*Monge v. California,* 524 U.S. 721, 741 (1998) (Scalia, J., joined by Souter and Ginsburg, JJ., dissenting) (*Almendarez-Torres* was "grave constitutional error affecting the most fundamental of rights"); *Jones v. United States,* 526 U.S. 227, 252 (1999) (Stevens, J., concurring) ("it is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed.").

[7]"[I]t is arguable that *Almendarez-Torres* was incorrectly decided." *Apprendi,* 120 S. Ct. at 2362.

argument for the Supreme Court. He has done so, but that does not warrant this Court to grant him relief. *See Agostini v. Felton*, 521 U.S. 203, 237 ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.").

Further, *Apprendi* itself carves out an exception for previous convictions: "*other than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 120 S. Ct. at 2362-63 (emphasis added). In doing so, the majority explained use of a prior conviction to increase a defendant's sentence does not implicate the same concerns as other sentencing enhancements because the defendant's previous conviction was accompanied by all the procedural safeguards required in a criminal prosecution. *Apprendi,* 120 S. Ct. at 2362. Mr. Dorris' *Apprendi* claim must fail accordingly.

**AFFIRMED**.