**F I L E D**

**PUBLISH**

**JAN 6 2003**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

MICHAEL JEROME BROWN,

    Defendant - Appellant.

No. 02-5007

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA
(D.C. No. 00-CR-119-C)**

---

Timothy Lee Faerber, Assistant United States Attorney (and David E. O'Meilia, United States Attorney, on the brief), Tulsa, Oklahoma, for Plaintiff - Appellee.

Art Fleak, Tulsa, Oklahoma, for Defendant - Appellant.

---

Before **EBEL**, **BALDOCK**, and **KELLY**, Circuit Judges.

---

**KELLY**, Circuit Judge.

Defendant-Appellant Michael Jerome Brown was convicted by a jury of a single count of possession of a firearm after having been convicted of a crime punishable by a term of imprisonment exceeding one year in violation of 18

U.S.C. § 922(g)(1).  He was sentenced to a term of imprisonment of 120 months followed by three years of supervised release, and ordered to pay a $1,000 fine.

On appeal, Mr. Brown challenges his conviction on the basis that § 922(g)(1) is unconstitutional as applied in this case because the government was not required to prove the gun possession had any actual or substantial effect on interstate commerce.  He challenges his sentence on the basis that the district court erred (1) by enhancing his sentence pursuant to U.S.S.G. § 3C1.2 for reckless endangerment during flight; (2) by enhancing his sentence pursuant to U.S.S.G. § 2K2.1(b)(5) for possessing a firearm in connection with another felony offense; (3) by failing to make particularized findings in response to his objections to the Presentence Report ("PSR") and by failing to reduce those findings to writing; and (4) by ordering him to pay a $1,000 fine when it was clear that he had no ability to pay a fine.  We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), affirm the conviction and sentence, and remand to the district court to enter a determination pursuant to Fed. R. Crim. P. 32(c)(1).

Background

On May 8, 2000, Mr. Brown escaped from the Oklahoma County Jail in Oklahoma City, Oklahoma.  He traveled to Tulsa, Oklahoma and ended up in an

- 2 -

apartment occupied by Gwendolyn King on the evening of May 8. While there, Mr. Brown removed his shirt and Ms. King noticed a gun in his belt. She asked him to remove the clip and unload the gun. Mr. Brown went into the bathroom and returned with the gun in his front right pocket.

Upon waking up on May 9, 2000, Ms. King discovered that Mr. Brown was still in the apartment. She told him that he needed to leave, but Mr. Brown declined. Ms. King then went outside and informed an apartment security guard that Mr. Brown was in her apartment with a gun and refused to leave. Tulsa law enforcement had previously informed the security guard that a person wanted by the police was believed to be in the area, so he called the Tulsa police about Ms. King's complaint. Upon instructions from the guard, Ms. King returned to the apartment and asked Mr. Brown to accompany her to the store. As they exited the apartment, Ms. King noted that Mr. Brown had the gun with him.

Outside the apartment, the Tulsa police had arrived in response to the security guard's call. One of the uniformed Tulsa police officers spotted Mr. Brown and requested to speak to him. Mr. Brown "shoved his hands deep down into his pockets," VI R. at 114, and the officer ordered him to show his hands. Mr. Brown removed and showed his left hand. Upon receiving further commands to show his right hand, Mr. Brown removed his right hand and the gun from his pocket. Having spotted the pistol, the officer shouted "gun" to warn the

multitude of bystanders in the area and dove for cover. VI R. at 115. At this point, Mr. Brown took off running through the apartment complex.

The officer pursued with his own weapon drawn, shouting "he's got a gun." VI R. at 116. Mr. Brown ran past a pool and rounded a corner, stopping quickly on the other side to hide his gun in a water turn-off hole. Following close behind, the officer approached the corner and executed a tactical "weaver" maneuver to traverse the corner safely. Upon turning the corner, the officer encountered approximately ten children, ranging in age from five to thirteen years old, disembarking a school bus and pointing to the gun lying in the water turnoff hole, shouting "there it is." VI R. at 181. As the officer stopped to recover the gun from the hole, Mr. Brown fled the area. Later that day, Mr. Brown was found hiding in a vacant apartment and was arrested.

Discussion

Under § 922(g)(1), it is unlawful for any person:

who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year[,] . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1). Whoever knowingly violates § 922(g) "shall be fined as provided in this title, imprisoned not more than 10 years, or both." 18 U.S.C. §

- 4 -

924(a)(2).

I.  Constitutionality of § 922(g)(1)

Mr. Brown first argues that his conviction should be overturned because § 922(g)(1) is unconstitutional as applied in this case since the government was not required to prove the gun possession had any actual or substantial effect on interstate commerce.  At trial, the government showed only that the gun was manufactured in California, was in Mr. Brown's possession in Oklahoma, and therefore must have traveled in interstate commerce at some point.  Aplt. Br. at 13.  Mr. Brown believes that his conviction under § 922(g)(1) requires some evidence of a commercial or transactional aspect to his possession.  Id.  To support his argument, Mr. Brown points to a trend of the United States Supreme Court of limiting the federal government's reach under the Commerce Clause, demonstrated in his view by two cases, Jones v. United States, 529 U.S. 848 (2000), and United States v. Morrison, 529 U.S. 598 (2000).

We review challenges to the constitutionality of a statute de novo.  United States v. Bolton, 68 F.3d 396, 398 (10th Cir. 1995).  Mr. Brown acknowledges that his argument "might be foreclosed" by our holding in United States v. Dorris, 236 F.3d 582 (10th Cir. 2000), but seeks to preserve the argument for review by the Supreme Court.  Aplt. Br. at 12.  In Dorris, after thoroughly reviewing Morrison and Jones, we explicitly rejected an argument substantially similar to

Mr. Brown's and held that the government has no duty to prove that the gun possession had any actual or substantial effect on interstate commerce. 236 F.3d at 584-86.

"We cannot overrule the judgment of another panel of this court. We are bound by the precedent of prior panels absent en banc reconsideration or a superseding contrary decision by the Supreme Court." In re Smith, 10 F.3d 723, 724 (10th Cir. 1993). Because Mr. Brown cites no Supreme Court authority other than Morrison and Jones, which Dorris specifically considered, his argument regarding the constitutionality of § 922(g)(1) is indeed foreclosed. Accordingly, we conclude that Mr. Brown's conviction under § 922(g)(1) does not violate the Commerce Clause.

II.  Enhancement for Reckless Endangerment

Next, Mr. Brown argues that the district court erred by enhancing his sentence pursuant to U.S.S.G. § 3C1.2 for reckless endangerment during flight. Our review of the district court's determination that Mr. Brown's flight constituted reckless endangerment is deferential; we will disturb that finding only if it is clearly erroneous. United States v. Conley, 131 F.3d 1387, 1389 (10th Cir. 1997); 18 U.S.C. § 3742(e). Evidence underlying a district court's sentence is reviewed by viewing the evidence, and inferences drawn therefrom, in the light most favorable to the district court's determination. Conley, 131 F.3d at 1389.

Section 3C1.2 of the Sentencing Guidelines provides that "[i]f the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer, increase by 2 levels." U.S.S.G. § 3C1.2. For purposes of § 3C1.2,

> "Reckless" refers to a situation in which the defendant was aware of the risk created by his conduct and the risk was of such a nature and degree that to disregard that risk constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation.

U.S.S.G. § 2A1.4 cmt. n.1 (referred to by U.S.S.G. § 3C1.2 cmt. n.2). The standard of care envisioned by the Guidelines is that of the reasonable person, not the reasonable fleeing criminal suspect. Conley, 131 F.3d at 1389.

The district court found that while Mr. Brown was "trying to escape," he "disposed of the gun" in a water turn-off hole. VII R. at 11. The court found that such disposal "had to be in the presence of the children" getting off the bus because "it was the children that told the officers where the gun was." Id. at 12. Thus, because Mr. Brown disposed of the gun in such a way as to make it "accessible to children that are in grade school," the court found that such conduct clearly placed the children in grave danger, noting how fortunate it was that the children told the officer where the gun was "so that they would not later have gotten that gun and shot somebody and themselves." Id.

We conclude that the record fully supports the district court's findings and

we conclude that the district court's ultimate determination that Mr. Brown's conduct amounted to reckless endangerment is not clearly erroneous. Such conduct undoubtedly created a substantial risk of death or serious bodily injury to those children and to the other bystanders around the complex, and was certainly a gross deviation from the standard of care that a reasonable person would exercise in such a situation. Mr. Brown's argument that his conduct constituted only "mere flight" simply ignores the evidence and is not supported by the cases he cites. Aplt. Br. at 33-36.

III. <u>Enhancement for Firearm Possession in Connection With Another Felony</u>

Mr. Brown also argues that the district court erred by enhancing his sentence pursuant to U.S.S.G. § 2K2.1(b)(5) for possessing a firearm in connection with another felony offense. We review a district court's interpretation of the Sentencing Guidelines de novo, and its factual findings for clear error, giving due deference to the district court's application of the guidelines to the facts. <u>United States v. Walters</u>, 269 F.3d 1207, 1214 (10th Cir. 2001); 18 U.S.C. § 3742(e). We view the evidence and inferences therefrom in the light most favorable to the district court's determination. <u>Conley</u>, 131 F.3d at 1389.

Section 2K2.1(b)(5) of the Sentencing Guidelines provides that "[i]f the defendant used or possessed any firearm or ammunition in connection with

another felony offense . . . increase by 4 levels." U.S.S.G. § 2K2.1(b)(5). A "felony offense" "means any offense (federal, state or local) punishable by imprisonment for a term exceeding one year, whether or not a criminal charge was brought, or conviction obtained." U.S.S.G. § 2K2.1 cmt. n.7.

Except for its plain language, § 2K2.1(b)(5) provides little guidance regarding the nexus required between firearm possession and the felony offense. While we have noted that judicial interpretations of 18 U.S.C. § 924(c) provide "some guidance" in construing § 2K2.1(b)(5)'s "in connection with" requirement, United States v. Gomez-Arrellano, 5 F.3d 464, 466 (10th Cir. 1993), we have rejected any assertion that judicial precedent interpreting § 924(c) controls when a sentence may be enhanced under § 2K2.1(b)(5). United States v. Bunner, 134 F.3d 1000, 1006 (10th Cir. 1998). "Guided by these principles, we have generally held that if the weapon facilitated or had the potential to facilitate the underlying felony, then enhancement under § 2K2.1(b)(5) is appropriate." Id. (citing Gomez-Arrellano, 5 F.3d at 466). However, the enhancement is not appropriate if possession of the weapon is coincidental or entirely unrelated to the offense. Walters, 269 F.3d at 1219.

In his objections to the PSR, I R. Doc. 55 at 6, Mr. Brown argued that the enhancement should not apply because his gun was not used or possessed "in connection with" the escape from jail in Oklahoma City. He argued that "in

connection with" requires not just mere possession of the gun, but that the gun "facilitated or had the potential to facilitate another felony offense, either the *on-going* escape or some other offense." Id. (emphasis added). Mr. Brown did not specifically argue that the escape was complete before he was confronted by and ran from the police in Tulsa. See id. at 8 ("Mr. Brown emphatically chose not to use the gun to help facilitate his *continuing* escape from custody . . . ." (emphasis added)).

At the sentencing hearing, the district court found that "while trying to escape," Mr. Brown "had the gun in his possession" either specifically "in furtherance of his escape, which is a continuing offense" or because he was "contemplating some other action with the gun, which would be violence." VII R. at 11-12. The court stressed that "when Mr. Brown saw the officers he put his hand down on the gun . . . and hesitated" such that "the officer could be justified in believing that [Mr. Brown] was trying to decide whether to shoot or whether to run." Id. at 13. Thus, in light of all the evidence, including the fact that Mr. Brown had the gun later in the day of the jail escape, the court concluded that it was clear that Mr. Brown possessed the gun in furtherance of the continuing escape. Id. Accordingly, the court overruled Mr. Brown's objection to the enhancement.

On appeal, Mr. Brown relies again on the argument that his possession of

the gun was not "in connection with" another felony because he merely possessed a gun which, on the facts as he views them, neither facilitated nor had the potential to facilitate the escape. Aplt. Br. at 38-44. Mr. Brown now also argues that since there was no evidence that he had the gun at the actual time of the escape, the escape was complete after he left the jail successfully and thus the later gun possession could not be "in connection with" the escape. Id. at 37.

In Oklahoma, escape in the manner committed here is a felony punishable by imprisonment for a term exceeding one year. 21 Okla. Stat. § 443(A). In fact, Mr. Brown pled guilty to escape prior to sentencing in this case. II R. at 10. For us to determine whether the district court correctly found that Mr. Brown possessed the gun "in connection with" the escape, we must first address the district court's legal conclusion that the escape was sufficiently continuing such that Mr. Brown's possession of a gun the day after successfully leaving the jail can be in facilitation of the escape. Our circuit has not previously reached this precise question. To resolve it, we must first determine if the answer derives from federal or state law. Our review of this court's reasoning in other analogous contexts supports our conclusion that federal law provides the answer because reliance on state law definitions would impair federal uniformity in sentencing.

A discernible premise underlying many of our sentencing decisions is that "uniformity in sentencing may best be achieved by applying the Guidelines

without strict reference to state criminal law definitions." United States v. Brunson, 907 F.2d 117, 121 (10th Cir. 1990) (relying on federal law to hold that burglary of a dwelling is a crime of violence under § 4B1.1 because it involves a substantial risk that force may be used, regardless of the state law definition of burglary). We decline to rely on state law definitions for sentencing because "the uniformity in sentencing the Guidelines was intended to ensure would be jeopardized. Criminals with similar records might receive vastly different sentences simply because their past crimes were defined differently by different states." Id.

See also United States v. Diaz-Bonilla, 65 F.3d 875, 877 (10th Cir. 1995) (holding that "felony" as used in § 2L1.2 was to be defined by reference to the standardized federal law definition regardless of the state law classification); United States v. Vasquez-Flores, 265 F.3d 1122, 1124-25 (10th Cir. 2001) (refusing to rely on state law definition of theft when deciding what constitutes an "aggravated felony" under § 2L1.2(b)); United States v. Saenz-Mendoza, 287 F.3d 1011, 1014 (10th Cir. 2002) (holding that "aggravated felony" in § 2L1.2 can include offenses characterized as misdemeanors under state law); United States v. Gosling, 39 F.3d 1140, 1142-43 (10th Cir. 1994) (holding that state escape qualified as a "crime of violence" under § 4B1.2 because escape "by its nature involves conduct that presents a serious potential risk of physical injury to

another" even if state law offense involved required no violence); id. ("[E]ven in a case where a defendant escapes from a jail by stealth and injures no one in the process, there is still a serious potential risk that injury will result when officers find the defendant and attempt to place him in custody."); United States v. Springfield, 196 F.3d 1180, 1185 (10th Cir. 1999) (holding that a defendant's state law conviction for a nonviolent, walk-away escape constituted a "crime of violence" under the Guidelines because "escape is always a violent crime" regardless of "whether defendant was convicted under a state statute that defines escape as a nonviolent offense."); United States v. Turner, 285 F.3d 909, 915-16 (10th Cir. 2002) (deeming irrelevant the fact that state law distinguishes between violent and nonviolent escape for federal sentencing considerations).

Though each of the preceding situations presented a question that differs from the one we now face, we are satisfied that taken together, these cases demonstrate that we should not rely on a given state's assessment of whether escape is a continuing offense or is complete at the moment the escapee successfully escapes custody. Because we believe "uniformity in sentencing may best be achieved by applying the Guidelines without strict reference to state criminal law definitions," we decline to jeopardize that uniformity by relying on each state's possibly varying interpretation of whether escape is a continuing offense. Brunson, 907 F.2d at 121. Therefore, in light of our recognition that

escape presents a continuing threat of violence until the escapee is safely returned to custody, we hold that for purposes of §2K2.1(b)(5), every escape is sufficiently continuing such that possession of a gun subsequent to the initial departure from custody can qualify as being "in connection with" the escape. Our conclusion in this regard is buttressed by the Supreme Court's reasoning explaining why escape is a continuing offense under federal law, 18 U.S.C. § 751. <u>United States v. Bailey</u>, 444 U.S. 394, 413 (1980).

Our conclusion assumes greater importance because at oral argument in this case, it was suggested that escape is not a continuing offense under Oklahoma law pursuant to <u>Jackson v. State</u>, 964 P.2d 875, 891 (Okla. Crim. App. 1998). Our review of Oklahoma law convinces us that this issue has not been squarely addressed, much less decided, by the Oklahoma Court of Criminal Appeals ("OCCA"). In considering whether a felony murder instruction was warranted based on an underlying escape offense, the OCCA in <u>Jackson</u> answered in the negative, because the "facts indicate that Jackson had completed the crime of escape from a penal institution long before the homicide occurred." 964 P.2d at 891. Apparently, this passage alone is asserted to stand for the proposition that escape is not a continuing offense in Oklahoma.

We disagree. The OCCA in <u>Jackson</u> was clearly not addressing the question of whether escape is a continuing offense; rather, it was applying the

rule for when the underlying felony is terminated for purposes of felony murder. That rules states that "if the homicide is committed during the one, continuous transaction, the acts are so closely connected as to be inseparable in terms of time, place, and causal relation, and the actions tend to be explanatory and incidental to each other, the homicide has been committed during the felony in our statutory sense." Clark v. State, 558 P.2d 674, 678 (Okla. Crim. App. 1977); see also Irvin v. State, 617 P.2d 588, 597 (Okla. Crim. App. 1980). In Jackson, the OCCA merely determined that since the crime of escape was not part of one continuous transaction, inseparable in terms of time, place and causal relation, the escape could not qualify as the underlying felony for purposes of felony murder.

We note that in a case focused directly on escape, not felony murder, the OCCA gave an indication that an escape does continue beyond the initial successful escape from custody. In Davis v. State, 763 P.2d 109, 110 (Okla. Crim. App. 1988) (emphasis added), in ruling that the facts did not support a duress defense to an escape charge, the OCCA relied on the fact that, "[a]t the time of his arrest, [the defendant] was still attempting to avoid detection and *complete his escape*, rather than surrender to outside authorities." Thus, though the defendant there had successfully removed himself from the jail, the court indicated that the escape was not yet complete. Therefore, cases defining the minimum elements constituting the offense of escape such as Boone v. State, 642

- 15 -

P.2d 270 (Okla. Crim. App. 1982) and Urbauer v. State, 744 P.2d 1274 (Okla. Crim. App. 1987) do not address whether an escape is necessarily complete upon the initial successful escape from custody. Furthermore, the OCCA's analysis of the availability of the duress defense for an escape charge mirrors the Supreme Court's analysis in Bailey, further supporting the conclusion that escape is a continuing offense in Oklahoma, as it clearly is under federal law. Compare Bailey, 444 U.S. at 409-15 with Davis, 763 P.2d at 110 (discussing availability of the duress defense in Oklahoma and collecting cases). However, given our conclusion above that we rely on federal law in this context, we need not definitively resolve this issue of Oklahoma law.

Having decided that the district court's legal conclusion regarding the continuing nature of an escape offense was correct, we proceed now to review the district court's finding that Mr. Brown's gun possession was factually "in connection with" the escape. Initially, we note that the district court correctly applied the law interpreting the "in connection with" requirement. Although the court did not expressly explain the limits of the requirement at sentencing, it clearly interpreted "in connection with" to require more than weapon possession that was merely coincidental or entirely unrelated to the escape felony. By relying on the evidence that Mr. Brown hesitated with his hand on the gun, the court was clearly focusing on whether the weapon facilitated or had the potential

to facilitate Mr. Brown's escape. Furthermore, in finding that Mr. Brown possessed the gun in furtherance or facilitation of the escape, the court relied on the evidence that Mr. Brown had the gun in his possession later in the day of the escape and that he was carrying it on his person the next day when confronted by the police in Tulsa. Accordingly, we conclude that the district court's finding that the gun was possessed "in connection with" the escape is not clearly erroneous and its enhancement under § 2K2.1(b)(5) was appropriate.

IV. Failure to Make Express Findings on Disputed Sentencing Issues

Mr. Brown also argues that the district court erred by failing to make particularized findings in response to his objections to the PSR and by failing to reduce those findings to writing. Mr. Brown asserts that the district court was required to do so by Fed. R. Crim. P. 32(c)(3)(D).[1] Aplt. Br. at 44. The requirements imposed by Rule 32(c)(1) are best understood in their proper context.

Rule 32(b)(6)(B) requires a defendant, within 14 days after receiving the PSR, to "communicate in writing to the probation officer . . . any objections to any material information . . . contained in" the PSR. Fed. R. Crim. P.

---

[1] Since December 1, 1994, when the relevant amendment to Rule 32 became effective, the proper basis for such an objection has been Fed. R. Crim. P. 32(c)(1). See Violent Crime Control and Law Enforcement Act of 1994, Pub. L. 103-322, Title XXIII, §§ 230101(b), (c).

32(b)(6)(B). Thereafter, the probation officer may meet with the defendant to discuss the objections to try to resolve any differences. Id. At a time not less than seven days prior to the sentencing hearing, the probation officer must submit the PSR to the court, "together with an addendum setting forth any unresolved objections, the grounds for those objections, and the probation officer's comments on the objections." Fed. R. Crim. P. 32(b)(6)(C). "Except for any unresolved objection under subdivision (b)(6)(B), the court may, at the hearing, accept the [PSR] as its findings of fact." Fed. R. Crim. P. 32(b)(6)(D). At the sentencing hearing, the district court may, in its discretion and "[f]or good cause shown," allow a "new objection to be raised at any time before imposing sentence." Id.

Rule 32(c)(1) then governs the district court's obligations at the sentencing hearing with regard to the defendant's objections:

> At the sentencing hearing, the court must . . . rule on any unresolved objections to the presentence report. . . . For each matter controverted, the court must make either a finding on the allegation or a determination that no finding is necessary because the controverted matter will not be taken into account in, or will not affect, sentencing. A written record of these findings and determinations must be appended to any copy of the presentence report made available to the Bureau of Prisons.

Fed. R. Crim. P. 32(c)(1).

In construing Rule 32(c)(1) and its predecessor, Rule 32(c)(3)(D), we have held that the district court does not meet its burden by simply adopting the PSR as its finding. United States v. Henning, 77 F.3d 346, 349 (10th Cir. 1996).

However, unless unresolved objections remain and those objections involve non-perfunctory "specific allegations of factual inaccuracy," no controverted matter exists, and the district court's fact-finding obligation under Rule 32(c)(1) is not implicated. United States v. Pedraza, 27 F.3d 1515, 1530 (10th Cir. 1994); United States v. LeRoy, 944 F.2d 787, 790 (10th Cir. 1991); United States v. Hart, 922 F.2d 613, 615-16 (10th Cir. 1990) overruled on other grounds as stated in United States v. Warner, 23 F.3d 287, 290 n.3 (10th Cir. 1994). Arguments that merely challenge the district court's "application of the guidelines to the facts and not the facts themselves" do not trigger any obligation on the part of the district court to make specific findings. United States v. Windle, 74 F.3d 997, 1002 (10th Cir. 1996).

In his objections to the PSR and again at the sentencing hearing, Mr. Brown levied general allegations of inaccuracies against the information in the PSR. I R. Doc. 55 at 1 ("The Offense Conduct . . . contains many inaccuracies, unsupported assumptions and conclusions based upon unreliable sources."); VII R. at 3 (referring generally to information in the PSR as "a whole bunch of fluff" that is "just not true"). It is clear that such generalized, perfunctory objections are not "specific allegations of factual inaccuracy" and are insufficient to controvert a matter such that the district court's fact-finding obligation under Rule 32(c)(1) is invoked. See, e.g., Hart, 922 F.2d at 615 (vague and cryptic objections are not

sufficient to invoke Rule 32).

Additionally, at the sentencing hearing, Mr. Brown himself claimed, among other things, that he did not run from the police, that he did not possess a gun and that he was not in Ms. King's apartment. VII R. at 7-11. After repeated questioning in an attempt to clarify the nature of the objections, the district court opted not to allow the objections at all and thus did not rule upon them, noting instead that "[t]he jury found you guilty, you are guilty[,]" and "I'm not trying the case again[,] [y]ou're here to be sentenced." Id. at 11. None of the objections raised by Mr. Brown were among the objections to the PSR filed November 9, 2001. I R. Doc. 55. Because these factual objections were "an unbelievable story" contradicting both the entire body of evidence before the court, VII R. at 10, and the verdict rendered by the jury, were raised for the first time at the sentencing hearing, and since Mr. Brown showed no good cause for why they should be allowed, we conclude that the district court did not abuse its discretion in refusing to allow them.

In his objections to the PSR, Mr. Brown next alleged that the basis cited in the PSR in support of the reckless endangerment enhancement was "inaccurate and misleading" for characterizing his conduct as "throwing the handgun on the ground." I R. Doc. 55 at 1-2. He asserted that his actual conduct was merely "[d]ropping the gun into a water turnoff hole," a characterization he believes to

be "far different than throwing it on the ground." Id. at 2. Mr. Brown also claimed that the water turnoff hole had a metal cover on it. Id. These two points appear to us to be Mr. Brown's only objections of factual inaccuracy relating to the reckless endangerment enhancement; his other objections on this issue relate only to application of the guidelines to the facts.

We conclude that neither of these objections is sufficient to invoke the fact-finding requirement of Rule 32(c)(1). At the sentencing hearing, counsel for Mr. Brown withdrew the contention relating to whether the hole had a metal cover, VII R. at 11-12, so this particular matter was no longer controverted. Furthermore, we deem immaterial the point relating to whether the gun was thrown or dropped, for such objection relates only to semantics. See id. at 4 (where Mr. Brown's counsel states that Mr. Brown "threw or *placed* the gun" in the hole) (emphasis added). The material fact here was whether Mr. Brown did in fact leave a gun behind in the presence of children as he ran from the police. No objection was levied against this fact, thus no specific allegation of factual inaccuracy exists to make this matter controverted. Essentially, Mr. Brown advanced an argument relating to how the court should interpret the facts when applying the guidelines, and this simply does not implicate Rule 32(c)(1).

Finally, Mr. Brown objected to various portions of the criminal history section of the PSR. I R. Doc. 55 at 8-9. One such objection, that Mr. Brown was

never arrested on February 28, 1988, was resolved and was no longer controverted at sentencing given the production of documentation supporting the PSR. See II R. Add. at 5. In several of Mr. Brown's objections, he takes no issue with the veracity of the facts included in the PSR, but only notes additional alleged facts that might otherwise have been included. I R. Doc 55 at 8-9 (including objections to page 6, ¶ 24 relating to both arrests in Sept. 1988, the objection to page 9, ¶ 29, the objection to page 10, ¶ 36, and the objection to page 11, ¶ 37). None of these objections rose to the level of specific allegations of factual inaccuracy and thus none of these matters were controverted, especially in light of the fact that the district court more than once explained that it would allow additions to the PSR if Mr. Brown provided some evidence to support them. See VII R. at 15, 18-20. The objection to page 9, ¶ 30 was also clarified as one not directed to the veracity of the facts, but to the prejudicial nature of those facts. VII R. at 18. Again, such an objection leaves the matter uncontroverted for the purposes of Rule 32(c)(1).

We are left with two allegations of factual inaccuracy to portions of the criminal history section of the PSR that give us pause. The first is an objection to page 6, ¶ 24 involving a hearsay statement in an arrest report that Mr. Brown "was heavily involved in drug trafficking." I R. Doc. 55 at 8. Mr. Brown denied that the statement was true and reiterated this point at the sentencing hearing. Id.; VII R. at 15. He did not deny that the report relied on by the probation officer

contained the statement. VII R. at 15. The district court stated that "[i]f it's not in the report, if it's not a true statement of the report I'll hear you on it, but we're not going to go in and try to invalidate the report." Id. at 16. The second is an objection to page 8, ¶ 27 involving whether Mr. Brown possessed rock cocaine during an arrest. I R. Doc. 55 at 9. Mr. Brown denied possessing rock cocaine, though at the sentencing hearing, the focus was on the fact that he was not charged with such possession. VII R. at 16-17. The PSR accurately reflected that Mr. Brown was not charged. II R. at 8.

Our review of these objections leads us to conclude that they were specific allegations of factual inaccuracy sufficient to implicate Rule 32(c)(1). Although these two disputed facts were obviously not relied upon by the district court in arriving at its sentence,[2] "[i]f the disputed facts are not important to the sentencing determination and will not be relied upon in sentencing, the district court should say so." United States v. Rutter, 897 F.2d 1558, 1565 (10th Cir. 1990). Doing so serves as a safeguard against the manifest unfairness to a defendant if false or unreliable information is relied upon by the Bureau of Prisons or the Parole Commission in their custody and parole determinations.

---

[2] The objection to page 6, ¶ 24 related to a description of Mr. Brown's juvenile adjudications for which no points were added to his criminal history total. See U.S.S.G. § 4A1.2(d). The objection to page 8, ¶ 27 related to facts wholly immaterial to Mr. Brown's plea of guilty to possession of a firearm, for which three points were added to his criminal history total.

United States v. Wach, 907 F.2d 1038, 1041 (10th Cir. 1990). Our review of the record leads us to conclude that the district court did not make an explicit determination that no finding was necessary as required by Rule 32(c)(1). Accordingly, we remand to the district court for the ministerial task of entering a determination that it did not take the controverted matters into account in sentencing Mr. Brown. United States v. Easterling, 921 F.2d 1073, 1081 (10th Cir. 1990).

V. Imposition of Fine

Finally, Mr. Brown challenges his sentence on the basis that the district court erred by ordering him to pay a $1,000 fine when it was clear that he had no ability to pay a fine. While we typically review a district court's decision to impose a fine under the Sentencing Guidelines for abuse of discretion, Mr. Brown's failure to object to the fine at or before sentencing requires us to accept the district court's decision absent plain error. United States v. Ballard, 16 F.3d 1110, 1114 (10th Cir. 1994); VII R. at 33.

The Sentencing Guidelines require the imposition of a fine "except where the defendant establishes that he is unable to pay *and* is not likely to become able to pay any fine." U.S.S.G. § 5E1.2(a) (emphasis added). Thus, Mr. Brown had the burden to establish both his present and future inability to pay. Id. With a total offense level of 26, the fine range for Mr. Brown's conviction was $12,500

to $125,000 pursuant to U.S.S.G. § 5E1.2(c)(3) and 18 U.S.C. § 924(a)(2). The district court found that "the defendant does not have the ability to pay a fine, the minimum fine," and thus exercised its discretion to impose a fine significantly lower than the guideline minimum. VII R. at 31; U.S.S.G. § 5E1.2 cmt. n.3.

In this case, we perceive no plain error in the district court's imposition of a fine. At sentencing, Mr. Brown did not object to the fine. Even assuming he established a present inability to pay a fine, he did not establish a future inability to pay. As in United States v. Klein, 93 F.3d 698, 706 (10th Cir. 1996), here Mr. Brown has not submitted any evidence establishing an inability to find future employment or any evidence indicating current or future financial liabilities that would prevent him from using future earnings to pay a fine. Mr. Brown's indigence at the time of sentencing did not preclude the imposition of a fine. Id. Accordingly, though the district court invoked its discretion to significantly reduce the fine based on a finding of Mr. Brown's *present* inability to pay, we observe no plain error in the imposition of the $1,000 fine.

Mr. Brown's conviction and sentence are AFFIRMED. We REMAND to the district court for the ministerial task of entering a determination pursuant to Rule 32(c)(1) regarding the two controverted matters discussed above.