UNITED STATES of America, Plaintiff–Appellee,

v.

William James CLARK, Defendant–Appellant.

No. 03–7100.

United States Court of Appeals, Tenth Circuit.

April 6, 2004.

Paul G. Hess, Asst. U.S. Attorney, Sheldon J. Sperling, U.S. Attorney, Office of the United States Attorney, Muskogee, OK, for Plaintiff–Appellee.

Paul D. Brunton, Fed. Public Defender, Barry L. Derryberry, Asst. FPD, Office of the Federal Public Defender, Tulsa, OK, for Defendant–Appellant.

Before TACHA, Chief Judge, BRISCOE, and HARTZ, Circuit Judges.

### ORDER AND JUDGMENT*

HARTZ, Circuit Judge.

Defendant William James Clark appeals the sentence imposed by the district court following his guilty plea to charges of impersonating a federal officer and being a felon in possession of a firearm. He contends that the district court erred by (1) failing to grant him a downward adjustment under United States Sentencing Guideline (USSG) § 3E1.1 for acceptance of responsibility because of post-plea statements that he made to a reporter for the *Tulsa World,* and (2) adjusting his offense

---

* After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R.App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

level upward by four levels under USSG § 2K2.1(b)(5) for using or possessing a firearm in connection with another felony offense, the interstate transportation of a stolen motor vehicle. Exercising jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. § 1291, we affirm.

## I. Background

### A. Facts

On May 26, 2002, a barge struck a beam supporting a bridge across the Arkansas River near Webbers Falls, Oklahoma. Several vehicles were thrown from the bridge and fourteen people died. Soon after the accident, Defendant arrived on the scene wearing a military uniform and introducing himself to the authorities present as Captain Clark of the United States Army. Defendant was not a member of the military at that time, nor has he ever been. Nevertheless he told those present that he was in charge and coordinated a review of items recovered from the river, including the victims' personal effects.

These misrepresentations were but the beginning of the false statements that he would make about his military status in connection with the bridge collapse. After a briefcase belonging to an actual Army captain was recovered from the river, Defendant took possession of it and contacted the officer's widow on multiple occasions. On May 28, 2002, he obtained the use of several motel rooms in Van Buren, Arkansas, by representing that he was an Army captain and assuring motel management that other government officials would pay the tab, which eventually totaled $900. That same day he obtained $464.26 worth of provisions from an Army surplus store in neighboring Fort Smith, Arkansas, by telling store employees that he was an Army captain who needed the supplies for the rescue effort. The following day he appeared in uniform and "borrowed" a 1997 pickup truck from a dealership in Searcy, Arkansas, telling the owner that he needed it to transport supplies to the rescue workers in Oklahoma. He failed to return the truck as promised.

Defendant was detained by police in Ontario, Canada, on June 9, 2002. At the time of his arrest, he was driving the stolen pickup and had a rifle in a case behind the front seat. He had purchased the rifle from an Oklahoma pawn shop two days before the bridge collapse, despite having been previously convicted of two felonies. A chaplain for the Muskogee County, Oklahoma, sheriff's department had seen the rifle in Defendant's vehicle at the accident scene.

### B. Proceedings Below

A grand jury of the United States District Court for the Eastern District of Oklahoma indicted Defendant on two counts: impersonating a federal officer in violation of 18 U.S.C. § 912, and possessing a firearm after a previous felony conviction, in violation of 18 U.S.C. § 922(g)(1). Defendant pleaded guilty to both counts and the court's probation office prepared a presentence report (PSR). The PSR recommended that his offense level for the felon-in-possession charge be adjusted upward by four levels under USSG § 2K2.1(b)(5) because he possessed the weapon in connection with another felony offense, the interstate transportation of a stolen motor vehicle. It also recommended that he receive a three-level downward adjustment under USSG § 3E1.1 for acceptance of responsibility for his conduct.

There were four addendums to the PSR. The first addendum reported that Defendant objected to the PSR on the ground that he should not receive the four-level upward adjustment because his possession of the rifle was not "in connection with" his

interstate transportation of the stolen pick-up truck. The second reported that the government objected to the three-level downward adjustment, contending that Defendant had made false statements in challenging the four-level upward adjustment, thereby demonstrating a failure to accept responsibility for his conduct. The third provided a factual clarification from the Ontario Provincial Police regarding the location and condition of the rifle when Defendant was apprehended. The fourth reported that Defendant had raised an additional objection to the four-level adjustment, claiming that his offense level could not be raised under 2K2.1(b)(5) because he possessed the rifle in Canada, a foreign country, and thus did not commit a felony under federal, state, or local law, as required by the guideline.

The fourth addendum also informed the district court that after Defendant's guilty plea and the release of the PSR, Defendant had made statements to a newspaper reporter that could be interpreted as being inconsistent with the acceptance of responsibility for his conduct. Those statements included that he "[had been] in the army, but was not at the time [the bridge collapse] happened"; that he "didn't put [the uniform] on until [he] was frustrated to the point of being mad" because "[n]othing was being done. Nobody wanted to take charge"; and that he was "told the reason why this happened to [him] was [he] made the government look like a fool" because he "was doing a better job than they were." Aplt. Reply Br. Exh. A at 1, 3–4 (internal quotation marks omitted). He concluded that, "[i]f anything," he would "go back and would have gotten there sooner … but [he] wouldn't have said who [he] said [he] was." *Id.* at 4 (internal quotation marks omitted).

Defendant then submitted an additional objection. After reiterating his objection to the four-level adjustment under 2K2.1(b)(5), he argued that the reduction for acceptance of responsibility remained appropriate despite his comments to the newspaper reporter. He stated:

The offense conduct and relevant conduct in this case have nothing to do with whether [he] was or was not in the military in the past. [Defendant] was not in the military at the time he impersonated an officer, and he has fully and timely accepted responsibility for that. Further, [he] admitted in the newspaper interview that he falsely pretended to be a military officer."

R., Vol. I, Doc. 27 at 2.

At sentencing on August 26, 2003, the district court found that a preponderance of the evidence demonstrated that a four-level upward adjustment under USSG § 2K2.1(b)(5) was appropriate. Information included in the third addendum to the PSR revealed that although the rifle was in a sleeve behind the front seat, it was plainly visible from outside the pickup, and easily accessible due to the amount of space behind the seat in the truck's extended cab. Furthermore, the gun was fully loaded, with one round in the chamber and four in the magazine. Although Defendant was arrested in Canada, the evidence indicated that he had passed through numerous states while traveling from Arkansas to Ontario. The district court concluded that "it [was] highly probable that the firearm did embolden [Defendant] to maintain possession of the vehicle and continue in his ongoing charade," R., Vol. IV, at 48, making the upward adjustment appropriate.

As for the downward adjustment under USSG § 3E1.1, the district court disagreed with the government's contention that Defendant's objections recited in the first addendum were inconsistent with accepting responsibility for his conduct. The

court found, however, that "post-plea behavior and/or statements made by the defendant ... [were] inconsistent with an affirmative acceptance of responsibility." R., Vol. IV, at 50. According to the district court, in Defendant's statements to a reporter for the *Tulsa World,* he was "minimizing his criminal conduct and justifying his actions. Further, he continue[d] to purport prior military service and the appropriateness of his acts as they relate to this case." *Id.* Accordingly, the district court refused to grant a downward adjustment for acceptance of responsibility and sentenced Defendant to 36 months' imprisonment for impersonating a federal officer and to 70 months' imprisonment for possessing a firearm after a previous felony conviction, the sentences to run concurrently.

## II. Discussion

### A. Downward Adjustment under USSG § 3E1.1

■ Defendant contends that the district court erred in not adjusting his sentence downward under USSG § 3E1.1 because he had taken responsibility for his conduct, and his comments to the newspaper reporter merely explained his motivation for that conduct. He argues that his post-plea misrepresentation of his military record is irrelevant to the consideration of whether he had accepted responsibility for the offenses to which he pleaded guilty.

According to USSG § 3E1.1(a), "If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels." Application Note 3 to § 3E1.1 provides that "[e]ntry of a plea of guilty prior to the commencement of trial combined with truthfully admitting the conduct comprising the offense of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which he is accountable ...

will constitute significant evidence of acceptance of responsibility...." But it adds: "[T]his evidence may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility. A defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right." *Id.*

This court is not ideally situated to weigh whether a defendant has accepted responsibility for his conduct. Rather, "[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review," USSG § 3E1.1, comment. (n. 5), and will be reversed only if it is clearly erroneous, *see, e.g., United States v. Hawthorne,* 316 F.3d 1140, 1145 (10th Cir.2003). In our view, the district court did not commit clear error in determining that Defendant's interview in the *Tulsa World* demonstrated a failure to accept responsibility for his crime.

### B. Upward Adjustment under USSG § 2K2.1(b)(5)

■ Defendant also challenges the district court's finding that he possessed the firearm "in connection with" his felonious interstate transportation of a stolen motor vehicle. He contends that the district court could not infer from the facts surrounding his arrest in Canada that he possessed a firearm "in connection with" a felony offense while he was in the United States. According to Defendant, "The bare fact that the gun was transported in the course of the trip to Canada cannot suffice to show by a preponderance that the gun was connected to the offense of interstate transportation of a stolen vehicle," Aplt. Br. at 16–17, and it is "anybody's guess" where he kept the weapon in

the truck as he traveled from Arkansas to the Canadian border, Aplt. Br. at 15.

"We review a district court's interpretation of the Sentencing Guidelines de novo, and its factual findings for clear error, giving due deference to the district court's application of the guidelines to the facts. We view the evidence and inferences therefrom in the light most favorable to the district court's determination." *United States v. Brown*, 314 F.3d 1216, 1222 (10th Cir.2003) (internal citations omitted). The guideline provides:

> If the defendant used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense, increase by 4 levels. If the resulting offense level is less than level 18, increase to level 18.

USSG § 2K2.1(b)(5). To satisfy the "in connection with" requirement under our precedents, the court must find by a preponderance of the evidence that the "weapon facilitated or had the potential to facilitate the underlying felony.... However, the enhancement is not appropriate if possession of the weapon is coincidental or entirely unrelated to the offense." *Brown*, 314 F.3d at 1222 (internal citation omitted).

In overruling Defendant's objection to the upward adjustment, the district court stated that the "relevant conduct include[d] the defendant traveling from Arkansas to Canada in a stolen or fraudulently obtained vehicle. During the course of his travels [Defendant] possessed a firearm." R., Vol. IV, at 47–48. The district court, applying language from *United States v. Walters*, 269 F.3d 1207, 1219 (10th Cir.2001), further found that it was "highly probable that the firearm did embolden [Defendant] to maintain possession of the vehicle and continue in his ongoing charade." R., Vol. IV, at 48. Defendant disagrees that the evidence supports this factual finding.

As stated above, the district court need only have concluded that possession of the firearm had the potential to facilitate Defendant's interstate transportation of the stolen pickup truck. Defendant concedes that the evidence shows that the rifle was in the truck as he traveled from Arkansas to Ontario. The district court could reasonably infer from Defendant's possession of an easily accessible, fully loaded rifle at the time of his arrest in Canada that he kept the rifle in a similar location and condition while traveling through the United States. Thus, we cannot say that the district court clearly erred in finding by a preponderance of the evidence that the rifle had the potential to facilitate the underlying felony.

### III. Conclusion

We AFFIRM the sentence imposed by the district court.

